NOT DESIGNATED FOR PUBLICATION

No. 129,646

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DEPARTMENT FOR CHILDREN AND FAMILIES, o/b/o K.C.N., a Minor Child,
and R.S., Necessary Third Party,
*Appellee*,

v.

C.A.N.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; KATHLEEN M. LYNCH, judge. Submitted without oral argument. Opinion filed August 7, 2026. Affirmed.

*Jeffrey Leiker*, of Leiker Law Office, P.A., of Overland Park, for appellant.

*Peggy S. Bisping*, contract attorney, of Wichita, for appellee Department for Children and Families.

Before COBLE, P.J., BRUNS and HURST, JJ.

PER CURIAM: In this child support action commenced by the Department for Children and Families (DCF), the alleged father, C.A.N., contends that the district court erred in denying his request for genetic testing to determine the paternity of K.C.N., a minor child. However, it is undisputed that C.A.N. signed a voluntary acknowledgment of paternity shortly after the child's birth in 2013, and that he is listed on K.C.N.'s birth certificate as the child's father. It is also undisputed that C.A.N. never challenged the validity of his voluntary acknowledgment of paternity until nearly ten years after the

1

child was born. For the reasons stated in this opinion, we find that the district court properly denied C.A.N.'s request for genetic testing. Thus, we affirm.

FACTS

K.C.N. was born on April 25, 2013, and C.A.N. signed a Paternity Consent Form for Birth Registration the following day. In the consent form, C.A.N. represented that he had "read the disclosure of basic rights and responsibilities of acknowledging paternity" and stated he is "the father of, and consent[ed] to the placing of [his] name as the father on the birth record of [K.C.N.], born 04/25/2013." This document was subsequently filed with the Kansas Department of Health and Environment, Office of Vital Statistics. And a certified copy is included in the record on appeal.

The first page of the Paternity Consent Form includes disclosures of "Basic Rights and Responsibilities of Acknowledging Paternity." Among other things, these disclosures state:

> "An acknowledgment of paternity creates a permanent father and child relationship which can only be ended by court order. A person who wants to revoke the acknowledgment of paternity must file the request with the court before the child is one year old, unless the person was under 18 when the acknowledgment of paternity was signed."

We note that there is no allegation that C.A.N. was under the age of 18 when he signed the form, or that he ever attempted to revoke his acknowledgment of paternity prior to the filing of this child support action.

On October 18, 2022, DCF filed a petition seeking child support on behalf of K.C.N. The petition was served on C.A.N. in January of 2023, and he filed an answer shortly after being served. In his answer, C.A.N. indicated his disagreement with the amount of child support requested by DCF. Moreover, he alleged that K.C.N. was not his

2

biological son and asked that genetic testing be performed to determine K.C.N.'s paternity. Originally, a court-appointed hearing officer denied C.A.N.'s request for genetic testing. But the hearing officer later reconsidered and ordered genetic testing. After the hearing officer denied DCF's motion for reconsideration of the order for genetic testing, DCF appealed to the district court.

The district court heard the appeal on September 14, 2023, and a journal entry was filed on October 6, 2023. In the journal entry, the district court denied C.A.N.'s request for genetic testing. Although a notice of appeal was filed on November 3, 2023, no action was taken by C.A.N. to docket the appeal until after the district court entered the journal entry of support on July 7, 2025. Likewise, C.A.N. failed to request a transcript until September 25, 2025. Still, on October 6, 2025, this court granted C.A.N.'s motion to docket out of time and the appeal was docketed instanter. Thereafter, the parties completed briefing over the next five months and this matter was ultimately set on the June 2026, non-argued docket.

ANALYSIS

*Kansas Supreme Court Rule 3.03*

At the outset, we note that DCF asserts that we should dismiss this appeal based on C.A.N.'s failure to comply with Supreme Court Rule 3.03(a) (2026 Kan. S. Ct. R. at 22-23). It argues that Rule 3.03(a)—which requires that "the appellant must request the transcript no later than 21 days after filing the notice of appeal in the district court"— should be strictly applied. In response, C.A.N. contends that his failure to abide by Rule 3.03(a) is "curable and should not deprive an appellant of review." C.A.N. also reasons that this court's allowance for him to docket his appeal out-of-time is controlling. Furthermore, he maintains that DCF has not identified any actual prejudice caused by his failure to timely request a transcript in the time set forth in Rule 3.03.

3

Although we do not take the failure to comply with the appellate rules lightly, this court has discretion over whether to dismiss an appeal for a party's failure to comply with the rules. See *Vorhees v. Baltazar*, 283 Kan. 389, 393, 153 P.3d 1227 (2007). We also recognize that Kansas law favors the resolution of legal disputes on their merits. See *McDaniel v. Southwestern Bell, Inc.*, 45 Kan. App. 2d 805, 809, 256 P.3d 872 (2011). The requisite analysis to determine the proper exercise of our discretion necessitates that we look at whether DCF was prejudiced by C.A.N.'s failure to comply with Rule 3.03(a). See *McCue v. Bruce*, No. 123,992, 2022 WL 1052421, at *3 (Kan. App. 2022) (unpublished opinion).

Here, we note that the transcript of the September 2023 hearing was ultimately filed on October 31, 2025. It was not until several months later that the parties filed their briefs. Specifically, C.A.N. filed his initial brief on March 5, 2026, and DCF filed its brief on March 10, 2026. But DCF does not identify any prejudice caused by C.A.N.'s failure to comply with Rule 3.03(a) nor do we find that it was prejudiced based on our review of the record.

As discussed below, the issue presented on appeal involves a question of law. Likewise, the facts material to the resolution of this question of law—in particular the date on which C.A.N. signed the voluntary acknowledgment of paternity and the date on which he first attempted to challenge its validity—are undisputed. See *In re A.S.*, 319 Kan. 396, 399, 555 P.3d 732 (2024). Under these circumstances, as well as the importance of this case to the minor child, the child's mother, C.A.N., and DCF, we choose to exercise our discretion to address the issue presented on the merits.

*Denial of Request for Genetic Testing*

On appeal, C.A.N. contends that the district court improperly denied his request for genetic testing. In particular, he challenges the validity of his voluntary

4

acknowledgment of paternity and argues that it does not bar the establishment of competing presumptions of paternity. DCF asserts that C.A.N.'s failure to challenge the validity of the voluntary acknowledgment of paternity—within a year, as mandated by K.S.A. 23-2209(e)—created a permanent parent-child relationship. Because the issue presented involves statutory interpretation, it poses a question of law over which our review is unlimited. *Nicholson v. Mercer*, 319 Kan. 712, 714, 559 P.3d 350 (2024).

The purpose of the Kansas Parentage Act (KPA), K.S.A. 23-2201 et seq., is to provide for the "'equal, beneficial treatment of children.'" *Reese v. Muret*, 283 Kan. 1, 10, 150 P.3d 309 (2007) (quoting *In re Marriage of Ross*, 245 Kan. 591, 597, 783 P.2d 331 [1989]). As such, the KPA requires courts to act in a child's best interests "'when imposing legal obligations or conferring legal rights'" on the parent-child relationship. 283 Kan. at 10 (quoting 245 Kan. at 597). The KPA recognizes that "'every child has an interest not only in obtaining support, but also in inheritance rights, family bonds, and accurate identification of his parentage.'" 283 Kan. at 10 (quoting 245 Kan. at 597).

In addition, the KPA sets out the process and deadlines for seeking to revoke a voluntary acknowledgment of paternity. K.S.A. 23-2209(e) provides:

> "Except as otherwise provided in this subsection, if an acknowledgment of paternity pursuant to K.S.A. 23-2204, and amendments thereto, has been completed the man named as *the father, the mother or the child may bring an action to revoke the acknowledgment of paternity at any time until one year after the child's date of birth*. The legal responsibilities, including any child support obligation, of any signatory arising from the acknowledgment of paternity shall not be suspended during the action, except for good cause shown. If the person bringing the action was a minor at the time the acknowledgment of paternity was completed, the action to revoke the acknowledgment of paternity may be brought at any time until one year after that person attains age 18, unless the court finds that the child is more than one year of age and that revocation of the acknowledgment of paternity is not in the child's best interest.

"The person requesting revocation must show, and shall have the burden of proving, that the acknowledgment of paternity was based upon fraud, duress or material mistake of fact unless the action to revoke the acknowledgment of paternity is filed before the earlier of 60 days after completion of the acknowledgment of paternity or the date of a proceeding relating to the child in which the signatory is a party, including, but not limited to, a proceeding to establish a support order.

"If a court of this state has assumed jurisdiction over the matter of the child's paternity or the duty of a man to support the child, that court shall have exclusive jurisdiction to determine whether an acknowledgment of paternity may be revoked under this subsection."

In *State ex rel. Secretary of DCF v. Smith*, 306 Kan. 40, 392 P.3d 68 (2017), the Kansas Supreme Court determined that the KPA prevents rescinding a voluntary acknowledgment of paternity outside of the expressed timeframes. Hence, challenges to the validity of a voluntary acknowledgment of paternity are barred—as a matter of law— if not brought within the statutory deadline. 306 Kan. at 57-58. As our Supreme Court explained, "[c]learly, the legislature intended to impose strict limitations on the two individuals who sign the VAP form." 306 Kan. at 57.

Ultimately, the Kansas Supreme Court held:

"[A]fter the child's first birthday, neither the man signing the VAP [voluntary acknowledgment of paternity] nor the mother can attempt to revoke the VAP, attempt to obtain a contrary determination of the father and child relationship by rebutting the presumption that arises from the VAP, or attempt to establish the existence of a conflicting presumption through, for example, genetic testing. When a man and a mother sign the form they agree and acknowledge that the VAP creates a 'permanent father and child relationship.' K.S.A. 2016 Supp. 23-2204." *Smith*, 306 Kan. at 58.

This holding is clear and the district court properly relied upon it to deny genetic testing in this case. See *Smith*, 306 Kan. at 58. Further, it is undisputed that C.A.N. signed

6

his voluntary acknowledgment of paternity as to K.C.N. on April 26, 2013. It is also undisputed that C.A.N. never attempted to challenge the validity of his acknowledgment until filing his answer in this case on January 9, 2023. Therefore, based on the plain and unambiguous language of K.S.A. 23-2209(e) and the Kansas Supreme Court's decision in *Smith*, we conclude that the district court correctly determined that C.A.N. could not rescind his voluntary acknowledgment of paternity as a matter of law.

Finally, we pause to note that the 2026 Kansas Legislature has amended K.S.A. 23-2209(e). L. 2026, ch. 88, §4. The amendments became effective on July 1, 2026. Nevertheless, neither party argues that the 2026 amendments apply to this appeal. Accordingly, we take no position on the impact—if any—the 2026 amendments might have on the rights of the parties in the future.

Affirmed.